By the Court.
This was an action by a school teacher to recoYer upon his contract of employment. One defense set up was that the contract was unauthorized and void, because at its date the teacher had no certificate of his qualifications, as required by law, although he subsequently, and before entering upon the discharge of his duties as teacher, procured the requisite certificate. This was no valid defense. The law (S. & S. 707, sec. 7) forbids the employment of a teacher who has not a certiiicate. The teacher is not “ employed/’ within the meaning and intent of this *195 provision, until lie engages in the discharge of liis duties as teacher. The mischief intended to be guarded against, was the teaching of a school by an incompetent person, and not the making of the contract by an incompetent person.
Thomas Millikin, for the motion :
I. The statute says, “ No person shall be employed as a teacher,” etc., “ unless he shall have first obtained a certificate,” etc., etc. S. & S. 707, sec. 8; 2 S. & C. 1361. Besides, it is made “ unlawful for the clerk to draw orders unless he has a certificate,” etc. The “employment” then was illegal. The directors were not only unauthorized, but were forbidden to make the contract.
It will be observed that the suit was to recover damages for breach of the contract. It was not for work actually done. The contract was executory, and Dilman was seeking to enforce it.
The rule of law, as to contracts which are executory, is, that if illegal, the court will not lend its aid. Roll v. Raguet, 4 Ohio, 400-418. The directors tendered payment for the nine and one-half days during which Dilman actually taught.
The question then is, was there, could there have been, a valid contract made on the 10th March? Had Dilman, at that time, the capacity in law to bind himself or the directors? Had the contract; at any time* between 10th *196 March, and 2d April, any validity whatever? Certainly not.
*195 Another defense set up was, that at the time of making the contract, there was not a sufficiency of funds legally subject to be appropriated for the payment of the teacher; and that, therefore, by the act of March 14, 1853 (S. & C. 1348, sec. 6), the contract was unauthorized. This ground of defense we also think invalid. The provisions of that section do not embrace or affect contracts for the employment of teachers, but relate to other matters. Contracts for the employment of teachers are provided for elsewhere in the act.

Motion overruled.

*196 Suppose Dilman had failed on 2d April to get his certificate, what then ?
The directors could not have sued him for not getting his certificate and teachiug the school. It would have been a sufficient answer, in that case, as in this, that the contract was one made in violation of law.
The statute law is founded upon public policy. The law was made to protect our common schools from impostors and quacks. Nichols v. Paulson, 6 Ohio, 305. In this case a physician was not allowed to recover for actual services, because he was not a member of a medical society.
The fact that, on 2d April, Dilman procured a certificate makes no difference. That certificate did not have any retroactive effect. It made Dilman competent to make a new contract, but gave no vitality to a previous contract which want illegal and void.
The language of the statute is imperative — no person shall be “ employed.” The contract of employment was therefore illegal.
II. The court erred in sustaining the demurrer to the second answer. That answer states that “ said service was not rendered under any valid contract, or under any contract, for any period of time.” If the services were not rendered under a valid contract, or under a contract for any definite period of time, the directors could discharge the teacher at any time. He could recover only for the time he taught, if at all.
III. The Common Pleas erred in sustaining a demurrer to the third defense.
The third defense is, that at the date of the contract, and during all the time the plaintiff taught, there was but $12.50 belonging to the district applicable to paying teachers, the residue of its allotment having been expended according to law, all which Dilman knew, and that no consent of the township board was obtained for making the alleged con *197 tract, for which reason the local directors had no authority to make said contract.
Is this a good defense ? The statute provides :
(a) That the funds to pay teachers shall be distributed ratably among subdistricts to scholars, etc., etc. S. & C. 1353, sec. 24; S. & 8. 714, sec. 25.
(b) Local directors may employ teachers, etc., dismiss teachers, etc., certify amount due them, etc. 2 S. & O. 1348, sec. 6.
(c) The board of education is the authority to regulate the time during which schools are to be kept — and to make provision for keeping schools beyond the time the regular allotment of money will warrant, etc., etc. 8. & S. 701; S. & S. 714, sec. 25.
For a failure to perform this duty, the members of the board are individually liable in damages. S. & S. 714, sec. 25.
(d) The local directors are forbidden to make contracts for payment of money, which in any one year shall exceed the ■amount distributable to the subdistrict, etc., etc., without first obtaining the consent of the township board. S. & C. 1348, sec. 7.
It will be claimed that this restriction is limited to contracts made under section 7; but that is a narrow construction.
Local directors employ and pay teachers, but not beyond the distributive fund of the subdistrict for that year, unless the township board makes provision for continuing the school.
If this is not the proper construction, the local 'directors, in one year, may not only exhaust the school fund applicable to paying teachers for the current year, but may anticipate the teachers fund for years to come, The next generation might be robbed of its school fund and grow up in ignorance.
Tne decision of the Supreme Court in 11 Ohio St. 326, does not conflict with this view. It only holds that the local directors ar§ the persons to employ and fix the compensation *198 of teachers, and that the township'board have no right to interfere with the exercise of that power. But when the local directors make a contract beyond the ratable appropriation which has been made to it, the contract is void, unless provision for such extension of time is made by the township board.
Campbell § Gilmore, contra:
I. The statutes cited in support of the first error assigned (in plaintiff’s brief), are simply directory. There is no penalty prescribed for a violation thereof.
If the board of directors violated the law in making the contract alleged, they will not be permitted to take advantage of their own wrong. It is not claimed but that they had a full knowledge of all the facts.
The contract was a valid and binding one, and even if it were voidable by either party by reason of the fact that Dilman had no certificate at the time the contract was made, the directors, by accepting his services after he had procured the certificate, ratified the contract, which at most was only voidable.
If the legislature had intended that such a contract should be void, it would have said so.
The plaintiff in error asks: “ Suppose Dilman had failed to get his certificate on 2d April, what then?”
I answer: If they had brought suit against him for damages, he could not have sot up the illegality of the contract as a defense.
Again, plaintiff in error says: “The law was made to protect our common schools from impostors and quacks,” and cites Nichols v. Paulson, 6 Ohio, 305, which is inapplicable.
There is another provision in the statute cited (S. & S. 707, sec. 8) that fully protects our common schools from “impostors” — i. e., no order can bo drawn upon the treasurer for the payment of teachers, unless ho shall have filed his certificate covering the entire time of his services, etc.
This gives complete protection, and it shows, too, that it *199 was anticipated by the legislature that contracts would be made before a certificate was obtained by the teacher.
II. It is true, as claimed, that the second defense also states “ that said service was not rendered under any valid contract, or under any contract for any period of time,” and it is claimed that this averment “ should have saved the answer against a demurrer.”
Upon a close examination of the second defense, it will be found to consist of a statement of facts, which the plaintiff in error relied upon to show that the contract was void — and the averment above quoted is simply an averment of a conclusion drawn from, the facts stated, and is mere surplusage, which would have been stricken out on motion ; besides, the plaintiff in error could not have been prejudiced, for the reason that under its first defense (which is a complete deuial), it could introduce all the evidence that could have been introduced under its second defense.
III. As to second error assigned, we say:
It was known to the directors that they had but $12.50 in the treasury, and they contracted with the teacher to wait till September 1st for his money.
The statute cited (S. & S. 714, sec. 25), we do not understand to affect the question before the court at all. There is nothing in the law to prevent the local directors from using up their proportion of the school fund in advance, provided they can get a teacher who will wait for his money until they get it.
S. & C. 1348, sec. 7, is by express terms limited to contracts made uuder the provisions of that section, while section 6 (same page) provides for the employment of teachers.
'We do not comment upon 11 Ohio St, 326, cited, for the reason that it is not shown by the record that the “ local directors have made a contract beyond the ratable appropriation made to their district.”
Thomas Millikin, in reply:
I. The statute requiring that no one shall be employed as *200 a teacher, unless he has a certificate, etc., is not mere'y directory. If directory, it may be dispensed with altogether. The clerk may draw orders without the certificate. Such a construction would set aside all safeguards provided by law to protect the schools.
There is a want of capacity to contract as a teacher without a certificate. With the same propriety it might be claimed that the wills act, providing that males under twenty-one years could not make a will, was directory. It is a question of power to act; it goes to the foundation of the contract.
It is not necessary that there should be a penalty attached to make the statute imperative.
II. Mr. Gilmore says if the directors violated the law, they will not be permitted to take advantage of their own wrong!
But the suit is not against the directors; it is against the district.
■ Can the directors make a contract they arc forbidden (o make and bind the district thereby? If Dütnan was ignorant of the want of power to make the contract, he might sue the directors as individuals, but not the district. Besides, it was Dilman’s wrong, not that of the directors.
"What is said about “ accepting his services” and “ratifying the contract,” would be more appropriate in a reply to the answer than in a brief.
Mr. Gilmore says S. & S., 707, see. 8, fully protects our common schools. But if you can dispense with the certificate when you contract, why can you not also dispense with it when yon pay ?